In re SEARCH WARRANTS FOR 14 STRAIGHT STREET, S.W., 439 IONIA, S.W., AND 2026 CHICAGO DRIVE.

Nos. 87–348M to 87–350M.

United States District Court, W.D. Michigan, S.D.

Oct. 28, 1987.

---

**592**

## OPINION

HUGH W. BRENNEMAN, Jr.,
United States Magistrate.

On October 19, 1987, the government filed a motion for reconsideration and amendment of an order entered October 13, 1987 (Attachment A) by the undersigned, requiring the government to furnish certain individuals and businesses copies of documents seized pursuant to several search warrants. In the alternative, the government sought a stay of the October 13, 1987 order pending an appeal to the district court. I entered an order denying the motion for reconsideration on October 20, 1987, but granting the government a stay if a timely appeal was filed (Attachment B). I also reserved the option of filing a written opinion regarding that order. That opinion follows.

### Background

On September 28, 1987, acting pursuant to three search warrants issued by this court, FBI agents seized large quantities of electronic equipment and business records at three locations in the Grand Rapids area. Two weeks later, two individuals and four businesses (collectively, the "owners"), who were apparently operating a single business enterprise at the three locations, filed a motion with the court to obtain copies of the documents seized in the raid, having been unable to persuade the government to relinquish copies voluntarily.

The owners contended, and the government did not dispute, that the seizures closed down the owners' business enterprise. Also seized were records regarding the filing of a September tax return and the employee payroll. The owners also claimed that documents were seized which pertained to other pending civil litigation. The owners offered to have the documents copied commercially (presumably at their own expense) with government personnel present, and initially were willing to accomplish the entire copying procedure in stages to accommodate the government.

The owners also sought the return of a single original document, a $93,000 cancelled check. This document raises considerations apart from those common to the other documents and will be considered separately below.

It is conceded by all that a Grand Jury investigation of the business enterprise and its owners is underway. No indictments have been returned. Although the government has discussed the possibility of furnishing copies of some of the seized documents, given sufficient time and identification of those documents, it essentially has taken the position throughout the proceedings that the owners simply have no right to copies of the documents during the pendency of the criminal investigation.

Following a hearing on October 13, 1987, I granted the owners' motion and directed the government to provide copies of all documents seized within a week's time. I further directed that as to any particular document to which it took exception, the government would have the burden of initiating an appeal to the district court.

On October 19, 1987, the government filed its present motion for reconsideration of that order or, in the alternative, a stay pending appeal. The owners filed a brief in opposition to the government's motion, and on October 20, 1987 I entered an order denying the government's motion for reconsideration but granting the stay if a timely appeal was taken.

*Authority of Court to Grant Relief*

■ The government initially questions the court's authority to entertain the owners' original motion. It concedes that the court may have ancillary jurisdiction over the issues before the court, but contends there are no primary proceedings—no pending civil proceedings nor pending criminal charges—to which the ancillary jurisdiction may attach. It cites in support of its position *Morrow v. District of Columbia,* 417 F.2d 728 (D.Columbia Cir.1969), which holds that once federal jurisdiction properly attaches, the court also has jurisdiction over certain subsidiary or subordinate disputes that it might not otherwise be able to entertain.

The dilemma of the owners in either seeking to keep their business enterprise afloat or in meeting their tax and employee obligations after their records have been confiscated is not an uncommon one. Frequently, the question of granting relief under these circumstances arises in the aftermath of an unsuccessful motion for the return of property under Rule 41(e), Federal Rules of Criminal Procedure.

Under the provisions of Rule 41(e), a person aggrieved by an unlawful search and seizure may move the district court for the return of the property. If the motion is granted, the property is not admissible in evidence at any subsequent trial. If the motion for return of property is heard after an indictment is filed, it is treated as a suppression motion under Rule 12. In order to prevail on such a motion, the persons seeking return of the property must establish that they are both legally entitled to the property and that it was illegally seized.

In instances where the legality of the seizure has been upheld, courts have nevertheless often granted alternative relief. In doing so, they have implicitly recognized their authority as a court to grant the type of relief sought here. *See Consumers Credit Insurance Agency, Inc. v. United States,* 599 F.2d 770 (6th Cir.1979) (upholding ruling by then-district Judge Robert Krupansky, that despite a determination that documents in the government's hands had been lawfully seized and government could keep copies, originals were to be returned to the petitioners since "great volumes of documents subpoenaed from petitioners could understandably impede the operation of their business for a protracted period,"); *Premises Known as Statler Towers v. United States,* 787 F.2d 796, 797 (2nd Cir.1986) (district judge denied a Rule 41(e) motion to return items seized pursuant to a search warrant, but ordered the government to allow inspection of the seized items and to provide copies of the records in its possession); *U.S. v. Hoskins,* 639 F.Supp. 512, 515 (W.D.N.Y.1986) (recognizing "equitable jurisdiction" courts have to order that copies of documents seized by the government be made available to movants).

In several instances the courts, in denying Rule 41(e) relief, have relied heavily on the fact that copies of seized documents had already been returned to their owners. *See Offices of Lakeside Non–Ferrous Metals, Inc. v. United States,* 679 F.2d 778, 780 (9th Cir.1982); *Standard Drywall, Inc. v. United States,* 668 F.2d 156, 157, n. 2 (2nd Cir.), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982); *Application of Sentinel Government Securities,* 530 F.Supp. 793 (S.D.N.Y.1982). Commenting on the three cases cited above, the Second Circuit has observed that these cases "may imply that the government has the duty to furnish appellants with copies of the more important records in order to prevent major hardship during the time preceding the indictment." *Statler Towers v. United States, supra* at 798.

The owners in this instance have not yet filed a Rule 41(e) motion, nor have they requested the court to unseal the supporting affidavits for the search warrants in order to determine whether grounds exist for such a challenge. The absence of a Rule 41(e) challenge leaves the case in the same posture it would have been in if there had been an unsuccessful motion, i.e., the court will presume that the searches and seizures were proper and that the government is legally in possession of the seized documents.

The Rule 41(e) motion, however, is not a necessary predicate to a motion for copies of the documents. First, it is not by the authority of Rule 41(e) that courts have granted copy relief, since Rule 41(e) neither addresses this question nor provides authority for granting such a remedy. Second, a copy motion logically is not a derivative of a Rule 41(e) return of property motion (although it may be used as a fallback position if the return of property motion fails). Rather, both motions derive their existence from the court's underlying order granting the search and seizure warrant.

The government is in the possession of the documents solely by virtue of the court's order, and it is the court's authority which defines the parameters of a search—the date of the search, the hours of the day when it may occur, the scope of the search and the extent of the items to be seized. The court must also determine whether a search has exceeded those parameters. See Rule 41(e). Clearly, it is the court's further duty to ensure that the intrusion created by its order is no greater than is justified by the government's legitimate investigation. I do not understand the government to be arguing that the court loses its jurisdiction to modify the terms of a search warrant to prevent unnecessary intrusion once the warrant is issued, nor do I believe it plausibly could. A subsequent modification governing the conditions under which evidence seized by court authorization will be maintained, again made to minimize hardship, is no different.

Here the owners allege that the effect of the seizures has been to close down a legitimate business, interfere with their ability to meet their tax obligations and interfere with their payroll responsibilities, not to mention interfere with their ability to defend themselves during the course of a criminal investigation. Whether the court's authority to address this issue is referred to as its ancillary jurisdiction stemming from its power to issue the underlying warrants, (see Morrow v. District of Columbia, supra), its equity jurisdiction, (see Consumers Credit Insurance; Statler Towers; Hoskins, supra), or simply its inherent power to act in aid of its own jurisdiction, it is evident the court may consider and adopt such reasonable measures as will prevent unnecessary intrusion upon the property owners without interfering with the legitimate purposes of the government's investigation.

### Return of Property Cases

The government raises two arguments which require a response.

The government points to cases holding that the court does not have the power to suppress or return evidence which is the subject of a current Grand Jury investigation. E.g., U.S. v. Francis, 646 F.2d 251, 262 (6th Cir.1981); U.S. v. Martinson, 809 F.2d 1364, 1366–67 (9th Cir.1987); U.S. v. Mid–States Exchange, 620 F.Supp. 358 (D.C.S.D.1985). These cases are not on point. The thrust of these cases, brought pursuant to Rule 41(e), was to obtain the return of the seized property itself (e.g., guns, money, documents). In Mid–States, the only case of the three cited actually involving either documents or a pending criminal investigation, this would have amounted to suppressing the evidence the government might have needed at trial.

Certainly the government is entitled to keep properly seized evidence, whether it be original documents, or copies if that is all the government has. The owners here do not seek any relief inconsistent with this principle. The owners have emphatically stated that their motion was not brought pursuant to Rule 41(e) and they are not seeking to deprive the government of the originals or even copies of the documents which the government may need for an investigation and perhaps trial (at least at this time). They are only seeking permission to make duplicates for themselves (an act, incidentally they obviously would have had the legal right to perform had the documents remained in their possession). Thus, the typical "return of property" cases relied upon by the government are simply not appropriate here.

### Discovery Cases

The government also seeks to frame the issue as one of discovery—arguing that the

owners are seeking discovery which is prohibited by the Federal Rules of Criminal Procedure during this stage of the government's investigation. Whatever the validity may be of the government's contention that its investigation is shielded from discovery, its underlying premise—that the owners are seeking discovery—is without foundation. The owners seek access, not discovery. They already know what the government has, even if they may not have memorized it, since the government took it directly from them. The court's warrants which grant the government a right to obtain these documents does not, of itself, automatically extinguish the access previously enjoyed by their legitimate owners. Where contraband is not involved, the government's seizure entitles it to temporarily hold the property, but not to the exclusion of the owner if this will cause the latter unnecessary hardship. To cast this dispute in terms of a discovery issue simply ignores the reality of the situation, and allows the government to use its shield as a sword.

The cases relied upon by the government in support of its argument that the owners are not entitled to copies of legally seized documents because this constitutes discovery is distinguishable. In that case, *In Re Grand Jury Proceedings Involving Berkley & Co.,* 466 F.Supp. 863, 867, *aff'd,* 629 F.2d 548 (8th Cir.1980), the movants sought copies of documents which had been obtained by the government from a third party, who had taken them from the movants independently of the government. This is discovery in the classic sense. Unlike the present case, the documents had not been taken directly from the movants themselves by virtue of a court order. (As it happens, there was a second set of documents in the *Berkley* case which was seized by the government directly from the movants pursuant to a search warrant, but these documents were not the subject of the motion to obtain copies. *See* 629 F.2d

at 550). This case does not help the government.

### The $93,000 Check

■ The movants' request for return of an original document, a $93,000 check, as opposed to merely requesting a copy of the check, constitutes a request for the return of property and would be subject to a Rule 41(e) motion.[1] Since the owners have not yet brought such a motion, much less proven the illegality of the seizures as required by Rule 41(e), the check may not be returned. Since the government is entitled to keep documents legally seized (see Return of Property Cases above), and since the court rules provide a specific method for obtaining documents seized by the government illegally which may later constitute evidence before a Grand Jury or at trial (see Rule 41(e)), it would be inappropriate at this stage for the court to circumvent the rights of the government, and indeed render Rule 41(e) a nullity, by simply returning the document prior to completion of the government's investigation, in response to a lesser motion which does not even attempt to meet the requirements of Rule 41(e).

### Owners Entitled to Relief

Once the merits of the motions are reached, they are rather easily resolved. While the information furnished to the court is rather sketchy, it may be taken as established for purposes of these motions that the seizures of the documents did in fact close down an ongoing business enterprise employing individuals at several locations, interfered with payroll obligations of that business enterprise, may have interfered with compliance with tax obligations, and will interfere with any attempt of the owners to defend themselves during the course of this investigation.

The owners contend their business enterprise is legal. Although arguing that the issuance of the search warrants reflect a

---

1. A U.S. magistrate does not have authority to decide a Rule 41(e) return of property motion, since it constitutes a motion to suppress evidence in a criminal case. 28 U.S.C. § 636(b)(1)(A). A motion for copies of records, by contrast, is not dispositive and may be heard by a magistrate. W.D.Mich. Rules, Appendix A, Rule 1(c).

probable cause finding that the businesses which were part of this enterprise were acting in violation of the law, the government contends that the question of the legality of the business enterprise is irrelevant at this point. That is the question, the government contends, which is the subject of the Grand Jury investigation and which is "the very issue to be decided by the trial court, should an indictment" be returned.

While the search warrants gave the government authority to seize evidence in aid of its investigation, the warrant did not give carte blanche authority to the government to close down the owners' business until its legality could be affirmatively established at some indefinite date in the future. As the government points out, the legality of the business enterprise has yet to be determined. Absent that determination, it not the court's intent, by issuing the warrants, to penalize the businesses. Any intrusions on the businesses caused by the warrants should be the unavoidable secondary effects of the government's legitimate investigative procedures. It is the court's implicit duty to ameliorate those intrusions where possible. Absent some countervailing consideration, the owners are entitled to have access to their records for business purposes and in preparation of their defense.

In contravention, the government offers only the contention that releasing copies of the documents "could very well impede the Grand Jury's investigation." No further explanation is offered, and without one the scales must tip in favor of the owners.

Finally, the government states that it would be willing to provide copies of seized documents which do not pertain to the four businesses listed in the warrants, if the owners identify these items with specificity. This offer is of little assistance since it does not address the business documents sought by the owners.

### Conclusion

Both sides have now had ample opportunity to present their respective positions on these expedited motions. For the reasons discussed, I find no reason to overrule my original order permitting the owners to obtain copies of all the documents in question, except the original $93,000 check.

The question of the costs of copying the documents has not been raised. This will be done at the expense of the movants. *Statler, supra.*

Copying may be done under the supervision of the government.

On the question of granting a stay pending appeal, however, I hold for the government. I have no doubt the parties will expedite any appeal as they have the motions already considered, and should I be in error the irreparable harm to the government's investigation or the Grand Jury investigation, and to the public interest generally, would appear to outweigh any harm the owners might suffer by having their relief stayed for several more days.

### ATTACHMENT A

In re Search Warrants at 14 Straight Street, S.W., 439 Ionia, S.W., and 2026 Chicago Drive.

United States District Court
Western District of Michigan
Southern Division

Mag. Case No. 87–348M, 87–349M and 87–350M

### ORDER FOR COPIES OF SEIZED ITEMS AND ANCILLARY RELIEF

The Court having heard arguments from all parties;

NOW, THEREFORE, IT IS ORDERED that the government provide the movants with copies of all documents seized in the three searches that occurred on September 28, 1987, within one week (October 20, 1987).

IT IS FURTHER ORDERED that if the government decides not to turn over certain documents, they have the burden of detailing with specificity the documents that they are withholding and appealing the matter to District Court.

Dated: 10/13/87

/s/ Hugh Brenneman, Jr.
Hon. Hugh Brenneman, Jr.

ATTACHMENT B

In re Search Warrants at 14 Straight Street, S.W., 439 Ionia, S.W. and 2026 Chicago Drive.

United States District Court
Western District of Michigan
Southern Division

Mag. Case No. 87–348M, 87–349M and 87–350M

ORDER DENYING MOTION FOR RECONSIDERATION AND AMENDMENT OF ORDER AND GRANTING STAY PENDING APPEAL

On October 13, 1987, the undersigned granted a motion that the government furnish copies of documents seized on September 28, 1987 pursuant to three search warrants. The government was given seven days to provide the copies. The government seeks reconsideration and amendment of this order, or in the alternative, a stay pending appeal. The original movants object.

Upon due consideration, and for the reasons stated at the hearing held on the original motion on October 13, 1987, the government's motion for reconsideration and amendment of order is denied. However, the government will be given an additional three (3) days (or a period of ten (10) days from the date of the initial order), in which to file an appeal with the district court. If such an appeal is timely filed, the court's original order of October 13, 1987 will be stayed pending outcome of the appeal. The court reserves the option to file a supplementary written opinion in this matter.

IT IS SO ORDERED.

Entered: 10/20/87

/s/ Hugh W. Brenneman, Jr.
Hugh W. Brenneman, Jr.
United States Magistrate