In re SEARCH WARRANTS CONCERNING NATIONAL INSURANCE CONSULTANTS INCORPORATED, Franklin Administrators, Inc., Christopher Stevenson, and Thomas Stevenson.

Nos. 91–902M, 91–903M, 91–904M, 91–905M, 91–906M.

United States District Court, D. Colorado.

Nov. 13, 1991.

John M. Haried, Asst. U.S. Atty., Denver, Colo., for U.S.

Jeffrey S. Pagliuca, Holland, Seelen & Pagliuca, Denver, Colo., for real party in interest.

## MEMORANDUM OPINION AND ORDER

RICHARD M. BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court on November 7, 1991. Present were the following: John Haried, Assistant United States Attorney; Jeffrey Pagliuca, attorney for the real parties in interest; Christopher Stevenson; and Thomas Stevenson. The Court heard the argument of counsel and then took this matter under advisement.

## I.

The issue before this Court arose as the result of the following factual scenario. National Insurance Consultants Incorporated, Franklin Administrators, Inc., Christopher Stevenson, and Thomas Stevenson (real parties) are in the business of administering what are described as employee welfare and Taft Hartley trusts. These are plans set up under ERISA to provide various employee benefits. From the statements of counsel, it is clear that the real parties have been administering plans that are the equivalent of health insurance.

The Department of Labor (DOL) apparently received several complaints concerning the operation of the plans run by the real parties. As a result, an investigation was started. This investigation began to focus on potentially criminal misconduct on the part of the real parties. There is no dispute that the investigation today is criminal, not civil. On the other hand, the indictment of the real parties is apparently not imminent and, perhaps, may never occur.

As a result of the investigation, the DOL approached the Office of the United States Attorney for help in seeking search warrants for various documents in the possession of the real parties. This request led to five separate search warrant applications, ranging from premises to vehicles. All were presented in July, 1991 to Magistrate Judge David West of this Court. Magistrate Judge West normally sits in Durango, Colorado but was present in Denver, Colorado while full-time members of the Court were at a Circuit Conference.

As a result of the issuance of the search warrants, the DOL seized several boxes of materials from the real parties. It is undisputed that the documents and other materials taken from the real parties included individual files for plan members. Those files contain medical information, doctor's reports, and other information that would be expected to be found in a health insurance file.

The DOL moved all of the documents to its regional investigative office in Kansas City, Missouri. The files remain there at this time. Some of the documents have been copied, with the copies then being given to the real parties. The issue before the Court is the status of the remaining boxes of documents that have not been so copied.

Contemporaneously with the issuance of the search warrants, Magistrate Judge West issued a order to seal the affidavits accompanying them. That order remains in place and is not at issue in this order.

The real parties argue that they have been shut down in the operation of their businesses. They further indicate that they have received requests from clients who are seeking payment of medical expenses incurred. Without the plan files, the real parties cannot pay these claims. The Government does not dispute this and has agreed to allow copies to be made of the files. It is the Government's position that any copying costs must be borne by the real parties. Further, the Government opposes any motion for return of the files and seized items to the Denver, Colorado area.

The real parties and Government do agree that the return of the original documents need not be reached by the Court at this time. In light of the issuance of these warrants by a different Magistrate Judge, it may be inappropriate for the undersigned to rule on the return of the property under Fed.R.Crim.P. 41(e).

## II.

The Government argues that any copy costs must be borne by the real parties. This argument is premised upon the theory that the issuance of the warrants means that probable cause exists to believe that criminal activity occurred and that the documents should remain in DOL hands until the investigation is completed. The argument then follows that the issuance of the warrants shifts the expense of copying to the real parties.

The real parties argue that they have had their businesses severely crippled by the seizure and that they have a duty to pay benefits from the plans. It is their

position that no benefits can be paid without the individual files. They further have indicated that the cost of copying, which may be as high as $10,000, will also cripple their businesses.

The issue before this Court has not arisen often throughout the country. The body of case law on this subject is not large. *See Premises Known as Statler Towers v. United States*, 787 F.2d 796 (2nd Cir.1986); *Premises Known as 55 West 47th St., N.Y. v. United States*, 712 F.Supp. 437 (S.D.N.Y.1989); *see also Search of Premises Known and Described as 6600 Long Island Expressway*, 1988 WL 142662 (E.D.N.Y.); *Jordache Enterprises, Inc. v. United States*, 1987 WL 9705 (S.D.N.Y.); *United States v. Freedman*, 688 F.2d 1364 (11th Cir.1982) (no requirement to pay for copying costs under Fed. R.Crim.P. 16). No cases in this Court or Circuit have been found.

The issue before the Court at this point is not the return of the original documents under Fed.R.Crim.P. 41(e). The affidavits remain sealed, and the real parties argue with legitimacy that they will be hampered in preparing for any hearing in which they seek the return of their property taken, as they do not know what was alleged by DOL staff. Further, there has been no indictment returned by the Grand Jury. It is not inconceivable that months and years could pass before this case is presented, if ever, to the Grand Jury.

Even if the motion for return of property were heard, the real parties must show that irreparable harm would occur if the documents were not returned. Irreparable harm normally will not be found when the government will provide copies. *See Offices of Lakeside Non–Ferrous Metals, Inc. v. United States*, 679 F.2d 778, 780 (9th Cir.1982); *Premises Known as Statler Towers, supra* at p. 798. Further, the Government will grant access to the files, but wishes not to return them to Colorado.

The only Court of Appeals' decision found on the issue of who is to bear copying costs is that of the Second Circuit in *Premises Known as Statler Towers, supra*. In that case, Postal Inspectors executed several search warrants on various related businesses and seized stationary, office supplies, telephones, and other items. The affidavit for issuance of the warrants was sealed but alleged that the grand jury needed access to the materials for its investigation. The businesses then moved for return of the items seized. This was heard by a United States District Judge who denied the motion. The trial court did order access to the documents and for copies to be made. The issue of the cost of copying was then taken under advisement by the trial judge. During the interim period of time, the businesses were indicted for mail and wire fraud.

The Court of Appeals for the Second Circuit upheld the trial judge's ruling directing access to the documents, the copying of documents, and that the copying costs be borne by the businesses.

> [W]e are convinced that Judge Elvin did not abuse his discretion in ordering that appellants must pay if they wish to have their records duplicated. Rule 41(e) provides only for return of property or its retention by the government, not for copying expenses. Accordingly, the judge correctly resorted to equitable principles to settle the costs issue, after determining that the original records should remain in the government's possession. The judge also reached a fair result. We know of no equitable principle which would require the government to pay for copies of records which it has no legal obligation to return, absent some extraordinary pre-indictment delay, once a district judge has determined that seizure of the item was proper.

*Id.* at p. 798. The Court of Appeals then set forth a general rule to be followed in the Second Circuit.

> Absent exceptional circumstances, we believe it proper to leave the burden of duplicating costs on a party who unsuccessfully moves before indictment for return of property seized under warrant. The government has a legal right to the evidence at that stage. Moreover, Rule 16 of the Federal Rules of Criminal Procedure suggests that the government

need not pay to retain it. While Rule 16 governs criminal discovery and does not apply to preindictment motions such as those brought under Rule 41(e), it provides a useful analogy for resolving the costs issue. In the discovery context, Rule 16's clear import is that defendants, at least nonindigent ones, must pay the cost of copying documents legally held by the government. (cit.omit). There is no reason not to follow the same general rule in the context of a failed pre-indictment challenge to the validity of a seizure.

*Id.* at p. 798. The question, then, is whether or not exceptional circumstances exist.

There are a number of factors that make the present case different from that in *Statler Towers*. First, there is no indication that an on-going grand jury investigation is in progress. Second, the affidavit remains sealed, and the real parties are at a disadvantage in seeking return of the original documents. Third, the property seized has been moved to Kansas City, some four hundred and fifty miles from this Court and the real parties in interest. Fourth, no grand jury indictment has been returned or is anticipated within a reasonable period of time, as so stated by counsel for the Government. Fifth, there is no dispute that the files of clients are necessary for payment of medical claims under the plans. Sixth, there has been no determination made that the property seized should not be returned. Seventh, almost four months have elapsed since the seizure of the items and no indictment has been returned.

The equities in this case are very different from that found in *Statler Towers*. Though the implication is present that the real parties have been operating in violation of provisions of the United States Code, there has been no judicial determination made of that fact. The DOL has chosen to undertake a criminal investigation rather than utilizing civil remedies, such as injunction, to close the business of the real parties. More importantly, all presumptions favor the real parties, even under the civil standard of preponderance of the evidence.

This Court does find that exceptional circumstances do exist in this case. The request of the Government that the property remain at the DOL office in Kansas City is appropriate and may help speed the investigation to conclusion. It is possible that the investigation will conclude that no criminal activity took place on the part of the real parties. Yet, leaving the documents in Kansas City will mean substantial cost of transport for the real parties to inspect the files and insure that copies are complete.

To expect the real parties to pay for both travel expenses and copying costs is too much. Such a result is inequitable, particularly when there is no doubt that serious harm is occurring to the real parties and their clients. There is no assertion that the clients of the real parties have done anything wrong. A division of the costs is appropriate and necessary in this case. If the real parties are ultimately indicted and convicted, then the copying costs can be assessed at that point. To allow the government to secure a warrant, seal the affidavit, move the property four hundred and fifty miles away, not make immediate presentment to the grand jury, and then demand costs for copies is simply unfair and inequitable. That is particularly true when there has been no judicial determination made that any wrongdoing has occurred on the part of the real parties. Supervised access to the seized property shall be given to the real parties. Copying costs for those documents that are requested by the real parties is to be borne by the Government.

IT IS HEREBY ORDERED that the motion for return of property is deferred, as is the motion to unseal the affidavit; and

IT IS FURTHER ORDERED that property seized in execution of these warrants may remain with the DOL in Kansas City, but that supervised access to the property and files shall be given to the real parties; and

IT IS FURTHER ORDERED that the costs of copying any remaining requested

documents is to be borne by the Government.